Good morning, Your Honors. My name is Jackson Schmidt. I represent Carl Schroeder. He was originally the plaintiff-relator in a Ketam action filed against C.H.2M Hill. After a long period of investigation, the United States intervened in the action. In the course of that, they filed charges against Mr. Schroeder. He struck a plea bargain. He signed, and for that, he was convicted of the very same crime that he later blew the whistle on, or originally blew the whistle on, and made the substance of the Ketam action. So would a person in his shoes continue to be a realtor under the statute? I believe, and the sole argument that I have here for you today, is that the statute was Do you have a case that says that? Because the plain language of the statute appears to negate any claim on the part of your client. It certainly does, Your Honor. And I do not have a case. But what I have is common sense and legal logic. Well, but if the plain language, we start with the plain language, and it's pretty standard with judges, and if it's not ambiguous, then it begins and ends there. Now, if you could show us what the ambiguity is, then we start talking about the policies. But even if we look at the policies, I think, isn't one interpretation of the provision that Congress didn't want anyone convicted for their role in a false claims to recover anything, regardless of the level of involvement? In other words, isn't the conviction itself an indication of culpability? I think that the ambiguity that you look at is, it's in 3703 itself, and it's between the two provisions. The one that says, someone who is a promoter and initiator of a scheme gets a reduced share of a reward, is eligible only for a reduced share, whereas someone who is convicted gets nothing. But in Carl Schroeder's case, as that statute is applied to him, it becomes ambiguous, because here's a guy who's far less culpable than someone who is a promoter. But once you become a convicted, I see them distinctly, and I can see where someone, there could be people that are innocent whistleblowers, okay? That would be possible. Your client, obviously, doesn't fall into that category. But I see that they're talking about two different groups of people that figuring, hey, if someone knows something about it, they may have something to do with it. But once they go the next level, that the government, where they're charged and they're convicted of a felony, you're not in the first category anymore. Yes, but was it the intent of Congress to put people like Carl? Again, he's the lowest of the low. He's the guy who's standing out in the tank farm. He still is convicted of getting $50,000 in false overtime, right? That's over five years. So then, I'm just sort of looking at it in around tax time, when all the taxpayers are paying more taxes than they want to pay. And so your guy gets money from this key tom to pay off his $50,000 restitution fee. And so then he just got $50,000. Well, but you see, and that- I'm seeing Congress wanting to get to that guy. I don't think that's correct. I think you put your finger on a conflict that arises if you have this interpretation that it applies to someone like Carl. And it's a conflict that goes right to the government. On the one hand, the government is charged with, the prosecutors are charged with affecting the purpose of the act, which is to encourage whistleblowers to come forward. So they are supposed to bring these people forward. They're supposed to protect them from retaliation and give them a reward for doing so. On the other hand, if you take this interpretation and it can apply to someone like Carl- Well, what if it were $1.5 million? And it may be. No, what if that was how much money that he got? And he was convicted of a felony and it was for $1.5 million? Is your argument still the same? If he is a low-level person like he is. If he's not, if he is an initiator or promoter, then it doesn't matter. But where in the statute does it say low-level, mid-level, high-level? No. I agree, it doesn't. But back to my point, isn't there a conflict of interest that's sort of created in the government? If the government is trying to save money by convicting people who are low-level people who then get nothing, as opposed to if they had convicted the upper-level managers out at CH2M Hill who put this scheme into place, they would only get a reduced share. That's a legislative argument. That's something that the legislature would have to consider if, because the Congress could easily put in an exception saying if they're a low-level employee, this doesn't apply. I understand. I'm just pointing out that I see levels of conflict here between the application of the statute as it has been applied to Mr. Schroeder and the purposes of the act, because now Mr. Schroeder, unfortunately, is the poster boy for whistleblowers at Hanford. There's a somewhat perfect analogy to charging drug crimes in the criminal context. It's very often the case that the best deal is available to the person at the top of the pyramid, because they can give you everybody down to the bottom, whereas the individual who's out on the street selling drugs doesn't have a whole lot to offer, and perhaps doesn't have the same negotiating room. The problem is in the wording of the statute. I do have sort of a follow-up question. Sure. Is this a case where your client came forward to the government and offered them information, and they conducted an investigation and determined that what he told them was accurate? I can give you some of the background, but again, I've been shielded. I am not privy to the government's investigation, so I do not know whether they think what he told them is accurate or not. They've never told me. They've never come to me and said, by the way, what he told you was wrong. Well, did he go to the government before or after the investigation began? It's an exercise in naivety, I think. Mr. Schroeder was being investigated for this. The government was investigating, and the reason he stepped forward and went to the Inspector General's office was that four of his buddies had been fired. From his perspective, he's going, this is company policy. My supervisors sign off on these things. My supervisors are leaving early. He was outraged, and so he went to them. It turned out he was under investigation at the time. They admit they did not have enough to convict him. They didn't know. He spilled the beans on himself. He gave himself to them, and the basis for his conviction was his own. And he got no jail time? So far, he hasn't been sentenced yet. Well, I thought he got no jail and 50,000 restitution. Yeah, that's the recommendation, but there has not been. Oh, the sentencing hasn't actually happened? It has not happened yet. All right, perhaps we should hear from the government. I think so. All right. Thank you. May it please the court, Robert Kamenschein, representing the United States. I think the argument that we just heard illustrates the basic problem here. You have a very explicit, clear statute. On the other hand, you have some strong disagreement with some of the policy that the statute is implementing. Let me ask you this. Has the government been allowing convicts and felons to get money under ketamine in some instances? We're aware of no such instances. And certainly, there are no decisions have been cited in which there's been that kind of award. What was cited is cases where you had people who had great complicity. There was evidence of their complicity, and the court was exercising discretion there as to the amount that could be recovered. The court was exercising discretion, or the government was exercising? Well, the discretion, the court, the statute, those are the two parts that Mr. Schmidt said were intentioned. There's that first part that says that for somebody who is central to the scheme, then the statutory amounts are not required. The court has discretion to make adjustments. And so in those cases that he's citing, that was what was involved there. That was the kind of adjustment that was being made. But there's no authority that we're aware of in which somebody who's actually convicted would get any kind of share. Was Mr. Schroeder represented by counsel when he spilled the beans? My understanding is that he was represented by counsel, both in the criminal side and the key TAM side. But precisely, I think that Mr. Schmidt may be in a better position to answer that. But I know he was represented. But precisely when that took effect, I'm not sure. So you don't know if he was represented at the time he made inculpatory statements? When he was, when he- May I finish? Yes, Your Honor. Before he made inculpatory statements to government investigative agents? I'm not sure of that, Your Honor. Maybe Mr. Schmidt knows that. I do want to say that from the government's point of view, Mr. Schroeder was approached by the inspector general of the Department of Energy. I think there's some factual dispute as to what actually occurred. Do you regularly represent the government on these key TAM? No, I don't, Your Honor. I'm with the appellate staff of the Department of Justice Civil Division. I'm not a regular key TAM litigator. I wonder if you have any thoughts on what Senator Grassley would think of this result. I think he would find that squarely within his intent. If you look at that little excerpt, he just said if somebody is convicted, they get zero. And there was no nuance. There was no shading. It's unfortunate that we don't have more to go on by way of committee reports, et cetera. But if you look at what he said, it's very clear.  And I think in terms of the exercise of discretion, certainly, and we pointed that out in our brief, the prosecutors make judgments as to how to proceed. I mean, they have these tools, and they look at the circumstances. And they know, they're aware of the consequences of a conviction. And Mr. Schroeder's attorney, at the time he entered into the plea bargain, I'm sure, was aware of what the statute said. So that's where the play in the joints comes in. It comes in in the dealing with the prosecutor. But once you have a conviction, then the statute just is mandatory. And of course, every authority we could find supports that. This court's decision in Lopez under the Prison Litigation Reform Act, the shell dismiss language, the court's drawing distinctions where one provision has may and shall in the same provision. And the court's saying may's discretionary shell is mandatory. Counsel, was Mr. Schroeder the initial whistleblower in this case? Well, we certainly don't agree that he was a whistleblower. But my understanding is he the person who brought this matter to the attention of the Inspector General? No, Your Honor. There was an anonymous tip, if you will, that triggered this whole thing. Now, how much, how detailed that tip was, I don't know. But that's what triggered it, not Mr. Schroeder. All right, thank you. So when you look at all of the decisions, the Eighth and Sixth Circuit talking about the provision is mandatory, the legislative history, all the commentators, we have unanimity of the result, despite the fact that one could debate whether this is too draconian, whether it should be more nuanced. But as it is, the district court did exactly what the district court was supposed to do. Thank you. All right, thank you, counsel. Rebuttal? I just would address Your Honor's question. Mr. Schroeder, when he initially went to the Inspector General on his own initiative and spent the three hours with her explaining things, he was not represented by counsel. But he went on his own. He went voluntarily. Yes. He was outraged that this was happening when it was company policy. But you don't disagree with counsel for the government that he was not the original source? Yes, I do. I agree that there was, I don't dispute that there was an anonymous tip. But at that point, they were looking at four or five people. Mr. Schroeder was one of them. They said they didn't, they were closing down the investigation. If we got to go back and do an examination of the record, we'd find out they were shutting it down. It's only because of Mr. Schroeder that it blossoms into four or 500 people. I actually think it's many more than that. And the upper-level managers. They thought, the government thought, this is low guys like Carl. They didn't find out until later, thanks to him, that it's the upper-level managers getting their six-figure bonuses by putting this policy into place. Were any of them charged? I don't think they have been. I know that some supervisors have been charged. And I know there have been some trials out there. And there have been some acquittals. It's quite surprising. Thank you. Thank you, counsel. Thank you to both counsel.  for decision by the court.
judges: Hawkins, Rawlinson, Callahan